UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 00-CR-6088-UNGARO-BENAGES

UNITED STATES OF AMERICA,

   Plaintiff,

v.

NICOLO MARIANI,

   Defendant.

## NICOLO MARIANI'S MOTION TO SEVER HIS TRIAL FROM THE TRIAL OF HIS CO-DEFENDANT MARCO MINUTO

The Defendant, Nicolo Mariani, through undersigned counsel and pursuant to Federal Rule of Criminal Procedure 14, the Due Process Clause of the Fifth Amendment, the Compulsory Process Clause of the Sixth Amendment, and *Byrd v. Wainwright*, 428 F.2d 1017 (5th Cir. 1970), respectfully moves this Court to sever his trial from the trial of his co-defendant Marco Minuto. In support of this motion, undersigned counsel states:

### INTRODUCTION

Nicolo Mariani and his co-defendant Marco Minuto are charged in Count Five of the indictment with conspiring to participate in the use extortionate means to collect extensions of credit. Count Six charges Mr. Mariani and Mr. Minuto with participating in the use of extortionate means to collect an extension of credit from the owner of Preferred Travel and Tickets, Inc. Both defendants are also charged in Count I with a RICO conspiracy that

allegedly involves the use of actual or threatened force to collect debts. Both defendants are presumed innocent and enjoy a constitutional right to present evidence of their innocence to the jury who will decide their fate.

In the present posture of this case, however, Mr. Mariani will be deprived of that right because the witness most critical to proving his innocence to Counts Five and Six is his co-defendant Marco Minuto. At a joint trial, Mr. Minuto will exercise his right not to testify, so the jury may convict Mr. Mariani without hearing Mr. Minuto's exculpatory testimony. Counsel for Mr. Minuto has represented to undersigned that the affidavit of Mr. Minuto's counsel makes clear, Mr. Minuto would testify that Mr. Mariani did not participate and did not conspire to participate in the use of extortionate means to collect any extensions of credit, including any extensions of credit from the owner of Preferred Travel and Tickets, Inc.

This motion seeks to ensure that Mr. Mariani's jury hears this totally exculpatory testimony, by severing his trial from the trial of his co-defendant Marco Minuto. At a severed trial, Mr. Minuto will testify, so the jury will know through Mr. Minuto's testimony that Mr. Mariani was not involved in the use of extortionate means to collect extensions of credit from the owner of Preferred Travel and Tickets, or from any other person. Absent the testimony of Marco Minuto, the jury may believe that Mr. Mariani committed the crimes charged in Counts Five and Six. He did not. On that basis, Mr. Mariani seeks a severance.

## MEMORANDUM OF LAW

The Fifth and Sixth Amendments to the United States Constitution guarantee to a criminal defendant the right to due process of law, the right to a fair trial, and the right to compulsory process to obtain the testimony of defense witnesses. To assure that these

constitutional guarantees are fulfilled in cases where one defendant seeks the exculpatory testimony of a co-defendant, the Eleventh Circuit and its predecessor, the former Fifth Circuit, have set out in detail the analysis for a trial court to follow.

The analysis starts with the general principle that the right to present relevant evidence is "a fundamental element of due process of law." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)). This essential right secured by the due process clause is "the right to a fair opportunity to defend against the [prosecution's] accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also United States v. Cohen*, 888 F.2d 770, 777 (11th Cir. 1989) ("[t]he trial court's discretion does not extend to exclusion of crucial relevant evidence"). Of all the ways that the accused might defend against such accusations, "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. at 302. In both *Chambers* and *Taylor*, the court found it to be a fundamental breach of due process and of the right to a fair trial for the trial court to preclude the defendant, based on procedural or evidentiary rules, from calling his witnesses to the stand.

The Sixth Amendment right to compulsory process is the primary constitutional guarantor of a defendant's right to secure the attendance of his witnesses at trial. *See Washington v. Texas*, 388 U.S. 14 (1967). As the court observed in *Washington v. Texas*:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

388 U.S. at 19; *see also United States v. Nixon*, 418 U.S. 683, 709 (1974) ("[t]o ensure that

justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense"). In *Washington*, the court struck a state law that prevented the defendant from calling a witness, who was otherwise willing to appear and to testify, simply because that witness also had been charged in the same crime.

To ensure that joinder of defendants under Federal Rule of Criminal Procedure 8(b) does not categorically prevent defendants from presenting relevant exculpatory testimony, this Circuit has fashioned an analysis used to determine whether the defendant seeking his co-defendant's testimony is entitled to a severance under Federal Rule of Criminal Procedure 14. The analysis provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.[1]

As noted above, that analysis is set out in *Byrd v. Wainwright* and its progeny, and it is to that line of cases that we now turn.

### Byrd and its Progeny

In the seminal case on this issue, *Byrd v. Wainwright*, 428 F.2d 1017 (5th Cir. 1970), the former Fifth Circuit addressed a defendant's right to a severance when a co-defendant possesses exculpatory testimony. In *Byrd*, a defendant in a state court rape case sought a severance from his co-defendants in order to adduce their testimony that he had not been

---

[1] Rule 14 is "construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." FED. R. CRIM. P. 2.

involved in the rape. *Id.* at 1018. The state court denied the motion, and the defendant was convicted. *Id.* Judge Atkins of this Court granted the defendant's habeas corpus petition, finding that denial of the severance violated due process. *Id.* The Fifth Circuit affirmed and identified five broad areas for trial courts to consider when passing on such motions for severance:

> (1) Does the movant intend or desire to have the co-defendant testify? How must his intent be made known to the court, and to what extent must the court be satisfied that it is bona fide?
>
> (2) Will the projected testimony of the co-defendant be exculpatory in nature, and how significant must the effect be? How does the defendant show the nature of the projected testimony and its significance? Must he in some way validate the proposed testimony so as to give it some stamp of verity?
>
> (3) To what extent, and in what manner, must it be shown that if severance is granted there is likelihood that the co-defendant will testify?
>
> (4) What are the demands of effective judicial administration and economy of judicial effort? Related to this is the matter of timeliness in raising the question of severance.
>
> (5) If a joint trial is held, how great is the probability that a co-defendant will plead guilty at or immediately before trial and thereby prejudice the defendant, either by cross-defendant prejudice or by surprise as it relates to trial preparation?

*Byrd*, 428 F.2d at 1019-20.

In the two decades of frequent appellate review that has followed *Byrd*, the original five areas of inquiry have been distilled into a two-part test, each part directing the trial court to weigh four factors. *United States v. Pepe*, 747 F.2d 632, 651 n.20 (11th Cir. 1984). The first part of that test determines if the defendant will be prejudiced if denied the co-defendant's proffered testimony. To satisfy this portion of the test, the defendant must demonstrate:

> (1) a bona fide need for the co-defendant's testimony; (2) the substance of

the testimony; (3) its exculpatory nature and effect; and (4) the likelihood that the co-defendant will in fact testify if the cases are severed.

*DiBernardo*, 880 F.2d at 1228. *Accord United States v. Smith*, 918 F.2d 1551, 1560 (11th Cir. 1990); *United States v. Harris*, 908 F.2d 728, 739 (11th Cir. 1990); *United States v. Funt*, 896 F.2d 1288, 1297 (11th Cir. 1990); *United States v. Machado*, 804 F.2d 1537, 1544 (11th Cir. 1986); *United States v. Pruitt*, 763 F.2d 1256, 1263 (11th Cir. 1985); *United States v. Bovain*, 708 F.2d 606, 610 (11th Cir. 1983).

Once the defendant has satisfied the first part of this test, the court then determines the propriety of severance by weighing four additional factors:

> (1) the significance of the testimony in relation to the [movant's theory of] defense[ ], (2) the extent of the prejudice caused by the absence of the testimony, (3) the effect of severance on judicial economy and the administration of justice, and (4) the timeliness of the motion.

*DiBernardo*, 880 F.2d at 1228. *Accord Smith*, 918 F.2d at 1561; *Harris*, 908 F.2d at 739; *Funt*, 896 F.2d at 1297; *Machado*, 804 F.2d at 1544; *Pruitt*, 763 F.2d at 1263; *Bovain*, 708 F.2d at 610; *DeSimone*, 660 F.2d at 540.

### Application of the *Byrd* Analysis to the Proposed Testimony of Marco Minuto

Based upon representations from Minuto's counsel to undersigned, Marco Minuto's proposed testimony satisfies both parts of the two-fold *Byrd* analysis.

1.  **The Importance Of Marco Minuto's Testimony: The First Four Factors**

    a.  *The Bona Fide Need For Marco Minuto's Testimony*

    If any one person is in a position to offer exculpatory testimony for Nicolo Mariani on the crimes charged in Counts Five and Six, that person is his co-defendant Marco

Minuto.[2] The government's theory of prosecution is that Mr. Mariani and Mr. Minuto conspired to use of extortionate means to collect extensions of credit from various individuals and then proceeded to use extortionate means to collect and extension of credit from the owner of Preferred Travel and Tickets, Inc. According to the government, Mr. Mariani and Mr. Minuto (accompanied by cooperating defendant Marcell Grasso) went to the offices of Preferred Travel and Tickets to collect a debt from Anson Klinger, one of the owners of the business. Anson Klinger was not in the office, but his partner Howard Berg was. Howard Berg is expected to testify that Mr. Mariani used force on him to collect Mr. Klinger's debt.

Based upon representations of Minuto's counsel, the affidavit of Mr. Minuto's counsel filed under seal, Mr. Minuto is the one person who can testify about what transpired at Preferred Travel and Tickets, Inc. Absent Marco Minuto's testimony, the jury might conclude that Mr. Mariani's presence at Preferred Travel and Tickets was for the purpose of collecting Mr. Klinger's debt and that he used force to collect that debt. Marco Minuto is the only witness who can credibly explain that Nicolo Mariani did not use force as alleged in Counts Five and Six of the indictment and that he in fact was not at Preferred Travel and Tickets for purposes of collecting any extensions of credit.

---

[2] Mr. Mariani and Mr. Minuto are charged in Counts Five and Six along with co-defendant Marcello Grasso. Mr. Grasso is now cooperating with the government and hoping that he will get a reduced sentence after he implicates Mr. Mariani in the crimes charged in Counts Five and Six. While Mr. Grasso's testimony is motivated by his own need to minimize his sentencing exposure, Mr. Minuto's testimony after the case is severed is not motivated by similar needs. In fact, there is no motivation for Mr. Minuto to testify in Mr. Marini's behalf other than the need to ensure that the jury knows the truth. Unlike Mr. Grasso, Mr Minuto will not get his liberty by testifying for Mr. Mariani.

### b. The Substance of Marco Minuto's Testimony

Based upon representations of Minuto's counsel, in her affidavit filed under seal, Marco Minuto's counsel describes with specificity what transpired at Preferred Travel and Tickets. She explains that Mr. Mariani's presence at Preferred Travel and Tickets was not related to Mr. Mariani collecting any debt. She also describes what transpired in the office and explains that Mr. Mariani did not use any force and did not threaten the use of force at any time.

### c. The Exculpatory Nature and Effect of Marco Minuto's Testimony

Based upon representations of Minuto's counsel, the exculpatory nature of Mr. Minuto's testimony fairly leaps from his counsel's affidavit filed under seal. That testimony exonerates Nicolo Mariani of the two extortion charges in Counts Five and Six. According to Mr. Minuto's counsel, Marco Minuto states that Nicolo Mariani at no point used force to collect an extension of credit and that indeed he never conspired with Mr. Minuto to do so. There was no plan to use force while collecting a debt and in fact none was used by Mr. Mariani. This testimony, if credited by the jury, means unequivocally that Nicolo Mariani is not guilty of Counts Five and Six.

### d. The Likelihood that Mr. Minuto will Testify at a Separate Trial

In *Byrd*, the former Fifth Circuit said that severance may be denied where the likelihood that the defendant would testify is no more than "a gleam of possibility in the defendant's eye." 428 F.2d at 1022; *cf. United States v. Shuford*, 454 F.2d 772, 778 (4th Cir. 1971) (defendant must establish a "reasonable probability that the co-defendant would testify). Through representations of Minuto's counsel, Marco Minuto has stated unequivocally that he will testify for Nicolo Mariani if their trials are severed and his own trial

goes first. This is the order of trials approved in *DiBernardo*.[3] Thus, this factor weighs heavily in favor of severance.

2. **Why Severance Is Appropriate: The Second Four Factors**

The appropriateness of severance in this case is demonstrated by the significance of Marco Minuto's testimony as represented by Minuto's counsel and set forth in the sealed affidavit, the extent to which the defense of Nicolo Mariani will be prejudiced if his testimony is lost, the timeliness of this motion, and by the minimal adverse impact a severance would have on the interests of judicial economy.

### a. *The Significance of Marco Minuto's Testimony to the Theory of Defense of Nicolo Mariani*

As explained above, the government claims that Nicolo Mariani conspired with Mr. Minuto to participate in the use of extortionate means to collect an extension of credit from Preferred Travel and Tickets. The government's "Soprano's" theory is that both men went to Preferred Travel and Tickets prepared to break arms and legs if the debt was not paid. According to the government, Nicolo Mariani went to Preferred Ticket to intimidate Anson Klinger and to collecting a debt. This is pure fantasy. There was never any agreement, express or implied, that Mr. Minuto and Mr. Mariani would use force to collect any money. Additionally, as represented by Minuto's counsel, Mr. Minuto's counsel's sealed affidavit makes it clear that Mr. Mariani never used any force on anyone at Preferred Travel and Tickets.

### b. *The Extent of Prejudice if Severance is Denied*

Because of the importance of Marco Minuto's testimony to Mr. Mariani's defense,

---

[3] *DiBernardo* requires that the affiant be tried first. Otherwise, the affiant would refuse to testify for fear that his testimony will later be used against him at his trial.

he will suffer acute prejudice if that testimony is lost as a result of the denial of a severance. It is not an oversimplification to say that Mr. Mariani's defense will be made with Mr. Minuto's testimony, but inadequate without it. Unlike Mr. Grasso, who will get a reduced sentence for testifying that Mr. Mariani was involved in the extortion charged in Counts Five and Six, Mr. Minuto will get nothing for testifying at Mr. Mariani's trial. He is certainly more credible than Mr. Grasso, the government's cooperating witness. At the very least, Mr. Mariani should have the same opportunity as the government to present evidence on Counts Five and Six. The only way to provide Mr. Mariani with this opportunity is by severing his trial from the trial of his co-defendant Marco Minuto.

### c. The Interests of Judicial Economy

Where a severance motion is timely filed and the need for the co-defendant's testimony is compelling, the extent to which judicial economy can weigh against severance may properly be called into question. As the Eleventh Circuit has observed, "a motion to sever based on the need for exculpatory testimony of a co-defendant implicates the constitutional rights of the movant." *DiBernardo*, 880 F.2d at 1226. Considerations of judicial economy, although relevant, "cannot be elevated to the point where they impair a defendant's rights under the Constitution[.]" *Pepe*, 747 F.2d at 651; *DiBernardo*, 880 F.2d at 1228 ("[T]he teaching of *Byrd v. Wainwright* and its progeny is that judicial economy must yield to a defendant's right to a fair trial"). In this case, Mr. Mariani's need for the exculpatory testimony of Marco Minuto outweighs the minimal adverse effect that severance would have on judicial economy.

### d. The Timeliness of this Motion

This motion is being filed before trial and within the time period for pretrial motions

set by this Court. The cases in which severance has been denied on timeliness grounds are those in which the defendant's motion was not made until after trial had commenced. See *United States v. Funt*, 896 F.2d 1288 (11th Cir. 1990) (motion made in seventh week of trial); *United States v. Perez*, 648 F.2d 219 (5th Cir. Unit B 1981) (motion made after government rested its case-in-chief). Thus, the timeliness of this motion weighs in favor of granting a severance.

3.   **The Procedure for Filing the Affidavit**

A trial court has broad discretion to determine the method by which it will consider the proposed exculpatory testimony of a co-defendant. In fact, an affidavit is not even required. *United States v. DiBernardo*, 880 F.2d 1216, 1219 (11th Cir. 1989) (trial court examined co-defendant personally); *United States v. Pepe*, 747 F.2d 632, 650 (11th Cir. 1984) (trial court held evidentiary hearing); *United States v. Perez*, 648 F.2d 219, 223 (5th Cir. Unit B 1981) (trial court considered co-defendant's testimony from suppression hearing); *United States v. Dennis*, 645 F.2d 517, 521 (5th Cir. Unit B 1981) (co-defendant allowed to proffer testimony in chambers); *United States v. Vigil*, 561 F.2d 1316, 1317 (9th Cir. 1977) (counsel submitted affidavit describing proffered testimony); *United States v. Martinez*, 486 F.2d 15, 22 (5th Cir. 1973) (trial court accepted oral proffer of defense counsel); *United States v. Shuford*, 454 F.2d 772, 775 n.1 (4th Cir. 1971) (same). The affidavit has been filed under seal on an *ex parte, in camera* basis for review by this Court. Mr. Minuto is concerned that if his counsel's affidavit is not filed under seal, that affidavit could be used against him at his own trial as an admission. For obvious reasons, Mr. Minuto's counsel would be unwilling to go into the detail that she has, and the Court would lack a complete factual basis on which to evaluate the need for a severance, unless her

affidavit is accepted for filing under seal.

Permitting the government to use against a defendant his statements in support of a *Byrd* severance would deter defendants with truthful exculpatory testimony from coming forward, thereby frustrating the administration of justice and defeating the purpose of the *Byrd* severance -- to ensure that an innocent defendant has the ability to present truthful exculpatory testimony from a willing co-defendant.

## CONCLUSION

For the foregoing reasons, defendant Nicolo Mariani respectfully requests entry of an order severing his trial from the trial of Marco Minuto, and permitting him to be tried after Marco Minuto.

Respectfully submitted,

**BRUCE A. ZIMET, P.A.**
One Financial Plaza
Suite 2612
Fort Lauderdale, Florida 33394
(954) 764-7081

By: _____
    **BRUCE A. ZIMET, ESQ**
    Florida Bar Number 225053
    Attorney for Nicolo Mariani

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on ___4 June___, 2001 a true and correct copy of the foregoing was furnished by mail to:

Michael J. Dittoe, Esq.
Assistant United States Attorney
500 East Broward Boulevard
7th Floor
Fort Lauderdale, Florida 33394-3002

-12-

Howard M. Srebnick, Esq.
Counsel for Marco Minuto
Black, Srebnick & Kornspan, P.A.
201 South Biscayne Boulevard
Suite 1300
Miami, Florida 33131


William J. Hunt, Esq.
Counsel for Joseph Minuto
William J. Hunt & Associates
155 Polifly Road
Suite 200
Hackensack, New Jersey 07601

Kerry A. Lawrence, Esq.
Counsel for Chris Greco
Briccetti, Calhoun & Lawrence, LLP
81 Main Street
Suite 450
White Plaines, New York 10601

By: _____
**BRUCE A. ZIMET, ESQ.**
Attorney for Nicolo Mariani